· PALESTINE COTTON SEED OIL CO. v. CORSICANA COTTON OIL CO.

Decided February 10, 1901.

**1.—Contract of Sale—Breach—Delivery—Time.**

Where defendant contracted to sell and deliver to plaintiff during the first half of October five car loads of cotton seed oil, in tank cars, to be furnished by plaintiff, it could not justify its breach of the contract on the ground that the cars were not furnished in time, where they reached the railroad station at defendant's mill three days in advance of the expiration of the contract time, and could have been loaded in time, but for defendant's side track to its mill being crowded with seed cars, a condition for which it was primarily responsible. See evidence held to show a substantial compliance on the part of plaintiff as to furnishing cars in time.

**2.—Same—Evidence.**

Evidence that it would take defendant six hours to load a tank car with oil was properly excluded, it not being shown that plaintiff had any knowledge of the defendant's facilities for loading.

**3.—Same—Measure of Damages—Difference Between Contract Price and Market Price.**

The measure of plaintiff's damages was the difference between the contract price and the market price of the oil at the place of delivery on the last day it should have been delivered; and it did not change the rule that the buyer had by contract resold the oil and had filed that contract with other oil bought at less than such market price, where he would, but for such breach of contract, have also sold such other oil at the same higher market price.

Error from Anderson.   Tried below before Hon. A. B. Lipscomb.

*B. H. Gardner* and *Gregg & Brooks,* for appellant.

*Thomas B. Greenwood,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This action was brought by defendant in error against plaintiff in error to recover damages for the breach of a contract of sale of 30,000 gallons of cotton seed oil.   The trial of the case by a jury in the court below resulted in a verdict and judgment in favor of defendant in error for the sum of $2100, from which judgment this writ of error is prosecuted.   The following are the facts as disclosed by the record.

On the 14th of September, 1899, defendant in error agreed to purchase of the agent of plaintiff in error five tanks of cotton seed oil at 18 cents per gallon, f. o. b. cars at Palestine, the terms of said contract of sale being set out in the following letter written on said date by defendant in errror to plaintiff in error:   "We confirm purchase of you through John Hamilton of five buyer tanks prime crude cotton seed oil at 18 cents per gallon f. o. b. our tanks Palestine, for shipment first half of October.   Tanks to hold 130 barrels each, 10 per cent more or less."

On September 23d defendant in error wrote plaintiff in error as follows:   "If you can let us send you one or two tanks very early in October, please advise us in time, so that we can get tanks to you in time to move the five tanks bought of you for first half of October shipment."

Plaintiff in error replied to this letter on September 25th, stating that one tank could be sent at once, two more the last of the week, and the last two in about a week from September 25th.

On October 3d defendant in error wrote plaintiff in error as follows: "We beg to advise we have resold the oil bought of you recently to Swift & Company at 22 cents per gallon, first half of October shipment." On same day defendant in error wrote to their broker: "We confirm sale through you to Swift & Company of 625 barrels prime crude oil at 22 cents per gallon, f. o. b. buyer's tanks Palestine, Texas, first half October shipment. We bought this oil from Palestine mill at a low price, and it is absolutely necessary that tanks reach Palestine in time to load first half of October, or else they will get out of trade."

Swift & Company wrote plaintiff in error on October 4th: "We confirm purchase from you of 625 barrels prime crude cotton seed oil at 22 cents per gallon, load in our tank cars f. o. b. your mill, shipment first half October." Plaintiff in error wrote Swift & Company on October 5th as follows: "We would like to have you send the tanks at once to move the oil sold to Corsicana oil mill and then sold to you by them. Send tanks promptly. Can ship as fast as you can get tanks here." When plaintiff in error wrote this letter it knew that it would take two days for the letter to reach Chicago, and about eight days for the cars to come from Chicago to Palestine. This letter was received by Swift & Company on October 7th, and on same day they started seven tank cars from Chicago to Palestine for shipment of this oil, and on next day notified plaintiff in error that the cars had been sent, and requested that they be notified by wire if there was any delay in their transportation. These cars were shipped over the usual route and were carried to Palestine with the usual dispatch, two arriving October 12th and the others October 14th. There is a conflict in the testimony as to whether or not the plaintiff in error was notified on October 13th of the arrival of the two cars at Palestine on the 12th. The agent of the railway company at Palestine testifies that he notified the manager of plaintiff in error on the 13th of October of the arrival of said cars, and was told by him that plaintiff in error was not ready to have the cars placed on the mill siding, and would let the railway company know when they wanted the cars so placed. The manager denies that he was notified of the arrival of the cars on the 13th, but says if he had been so notified, the cars could not have been placed on the mill siding, because said siding was filled with seed cars. The siding was in this condition from the 12th to the 16th, and as the tank cars could only be filled when placed on the siding, they could not have been filled at any time between the 12th and 16th of October. On the morning of the 16th the railway company notified plaintiff in error that the cars had all arrived, and desired to know if they should be placed on the mill siding. This notice was given between 9 a. m. and 12 noon on the 16th. Upon receipt of this notice plaintiff in error informed the railway company that it would notify them if it desired the cars placed on the siding,

and then communicated with the defendant in error, the Corsicana company, and informed said company that the cars had arrived too late to be filled for shipment the first half of October. On the 20th of October plaintiff in error wrote defendant in error declining to fill the contract on the ground that defendant in error had made the performance of the contract impossible by failing to deliver the cars in time, but offering to fill the two cars which reached Palestine on the 12th. Defendant in error continued to demand the oil until the 26th of October, when it filled its contract with Swift & Company with other oil which it had bought for 20 cents a gallon. The price of oil began to advance in October, and on the 16th of the month the market price of prime crude cotton seed oil at Palestine was 25 cents per gallon. The price began to decline after the 16th, and on the 26th, when defendant in error filled its contract with Swift & Company, it was worth only 20 cents per gallon. Defendant in error, in order to be able to fill its contracts with Swift & Company, kept on hand and refused to sell five tanks of oil which it otherwise would have sold at 25 cents per gallon. There was no evidence as to how long it would ordinarily take a mill of the capacity of the Palestine mill to load five tanks of oil, nor any evidence that defendant in error had any knowledge of the facilities of the Palestine mill for loading tank cars. Plaintiff in error offered to prove by its manager, Johnson, and its president, Wright, that it would take their mill six hours to load a tank car with oil, but on objection of defendant in error this testimony was excluded on the ground that it was not shown that defendant in error had any knowledge of the facilities possessed by plaintiff in error for loading tank cars, neither was it shown or offered to be shown how long it would ordinarily take a mill of the capacity of the Palestine mill to load said cars. The evidence shows that it was the custom of the Palestine mill to load only one car at a time, and load through a two-inch pipe, but there is no evidence that defendant in error had any knowledge of these facts. Wright, the president of the Palestine company, testified: "If oil had been worth less than 18 cents on October 16th, it is very likely that the tanks would have been loaded." It is evident from the letters of defendant in error introduced in evidence that it construed the contract to require the tank cars to reach Palestine and be delivered to the plaintiff in error in time to be loaded during the first half of October. The only defenses pleaded by defendant in the lower court was the failure of the plaintiff to furnish the cars in time to make the delivery of the oil within the first half of October, and that plaintiff, having sold the oil at 22 cents per gallon and filled the contract with oil bought at 20 cents per gallon, could in no event recover more than 2 cents per gallon as damages.

We deem it unnecessary to consider the various assignments of error presented in the brief of plaintiff in error complaining of errors in the charge of the court on the issue as to whether or not the defendant breached the contract, because, under our view of the law applicable to the facts in this case, no other verdict could have been rendered than

one in favor of the plaintiff, and if the trial court committed any error in his charge in submitting said issue, such error was harmless.

Conceding that the contract required the defendant in error to furnish the cars in which said oil was to be shipped in time for them to have been loaded before 12 o'clock noon on October 16th, we think the evidence in the case shows conclusively that, if said cars were not so furnished, the failure to furnish them within said time was due to conditions for which the plaintiff in error was primarily responsible; and to permit plaintiff in error to avoid its contract because said cars were not so furnished would be to allow it to take advantage of its own wrong.

When the defendant in error notified the plaintiff in error that it had sold the oil to Swift & Company, and requested that it be delivered in accordance with, the contract in cars to be furnished by Swift & Company, plaintiff in error acquiesced in the transfer of the contract to Swift & Company, and with full knowledge of the fact that it required about eight days for Swift & Company to forward the cars from Chicago, it wrote said company on October 5th requesting that the cars be forwarded at once. This letter plaintiff in error knew could not reach Chicago until the 7th of October, and the evidence is uncontradicted that the cars were started from Chicago to Palestine on that day, and on the next day Swift & Company wrote plaintiff in error that the cars had been forwarded, and requested that they be notified by wire of any delay in their transportation. All of these cars reached Palestine by the 14th of October, which was in ample time for them to have been loaded before noon of the 16th. Notwithstanding the knowledge on the part of plaintiff in error that said cars had been forwarded from Chicago and could not reach Palestine before the 13th, according to the undisputed testimony plaintiff in error had its siding so filled with seed cars during all of the time between the 12th and 16th of October that the tank cars could not have been placed on said siding and loaded during any portion of said time.

In view of these facts the statement of the president of the defendant company, that "If oil had been worth less than 18 cents on October 16th, it is very likely the tanks would have been loaded," appears to us to be a frank statement of real reason for the failure of plaintiff in error to deliver the oil in accordance with its contract.

The offer of plaintiff in error to fill the two cars which arrived on the 12th was an admission that the failure to fill said cars before noon of the 16th was due to conditions for which plaintiff in error was responsible, as it denied it had any knowledge of the arrival of said cars in Palestine before the morning of the 16th, and its manager testified that he did not expect to be notified by defendant in error of the arrival at Palestine of any of said cars. The same conditions which prevented the loading of the two cars before the end of the first half of October also prevented the loading before said time of the three cars which arrived on the 14th, and plaintiff in error was as much responsible for

said failure in regard to the cars arriving on the 14th as in regard to those which arrived on the 12th. We think the trial court did not err in excluding upon the grounds hereinbefore stated the proffered testimony as to the length of time it would take the Palestine oil mill to load a tank car with oil. Said testimony was also inadmissible because immaterial under our conclusion, as to the effect of the undisputed evidence in the case, above expressed.

If our conclusion as to the effect of the evidence as above expressed is erroneous, we are of opinion that the judgment of the court below should be affirmed because the delivery of the cars to the plaintiff in error before noon of the 16th of October was such substantial compliance by defendant in error with the terms of the contract as contended for by plaintiff in error as would in equity entitle defendant in error, under all of the facts in this case, to enforce a performance of said contract by plaintiff in error.

There is nothing in the facts of this case which would make the application of the general rule as to the measure of damages for a breach of a contract of sale inequitable. It is true defendant in error filled its contract with Swift & Company with oil worth only 20 cents per gallon, and made a profit of 2 cents per gallon on said sale, but in order to fill this contract it had to hold the oil which it would otherwise have sold for 25 cents per gallon. We think it clear that under the evidence defendant in error has been damaged in amount equal to the difference between 18 cents per gallon, the contract price of the oil, and 25 cents per gallon, the market value at Palestine, Texas, on the day plaintiff in error failed to perform its contract, and the trial court did not err in rendering judgment for defendant in error for that amount. We are of opinion that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

### ON MOTION FOR REHEARING.

At the request of plaintiff in error we find the following additional conclusions of fact, and modify the conclusions stated in our former opinion as herein indicated.

1. It is not shown when the letter written by plaintiff in error on October 5th to Swift & Company, requesting that the cars be forwarded, was received by Swift & Company. In their letter of October 8th notifying plaintiff in error that the cars had been shipped on the 7th, Swift & Company do not refer to the letter of plaintiff in error of October 5th, and the cars were not forwarded in response to the request made in said letter. When plaintiff in error wrote the letter of the 5th of October it did not know where the cars would be shipped from, as they were liable to have been forwarded from St. Louis or at any point from which they could have been obtained on the International & Great Northern Railroad.

2. Plaintiff in error did not offer to fill the two tanks, which arrived on the 12th, in its letter to defendant in error on October 20th, but such offer was made on October 16th, and was conditioned that defendant in error would not insist on the filling of the remaining tanks. The offer to fill the two tanks upon condition that the defendant would consider the contract as at an end should not be considered as an admission by plaintiff in error that it was bound under the contract to fill said two tanks, and our reasoning upon that point in our former opinion is not sound, as the facts are now found to exist.

With these modifications of our findings of fact we adhere to our former opinion, and the motion for a rehearing will be overruled.

*Overruled.*