LA INDEPENDENCIA, S. A., et al. v. McADAMS. (No. 6089.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 20, 1918.)

1. SALES ☞81(3) — CONSTRUCTION OF CONTRACT—TIME FOR DELIVERY.

Where sales contract called for delivery of goods "during the month of March, 1916, and as quickly as possible," seller was required to deliver not later than March 31st.

2. SALES ☞418(2) — ACTION BY BUYER — FAILURE TO DELIVER—DAMAGES.

Where seller agreed to deliver goods "during the month of March, 1916, and as quickly as possible," buyer's measure of damages upon seller's failure to deliver is measured by the difference between the market value of the goods on the last day of delivery, March 31st, and the contract price.

Error from District Court, Webb County; J. F. Mullally, Judge.

Action by Y. O. McAdams against La Independencia, S. A., an alien corporation, and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Mann & Henry, of Laredo, for plaintiffs in error.

Greer & Hamilton, of Laredo, for defendant in error.

MOURSUND, J. Y. O. McAdams, on April 17, 1916, sued La Independencia, S. A., an alien corporation, chartered in the republic of Mexico, for alleged breach of contract to deliver three 12,000-gallon tanks of cotton oil seed and 25 bales of cotton seed linters, of 500 pounds each. The contract was in writing, and bound McAdams to pay 58 cents per gallon for the oil and 5 cents per pound for the linters. The contract contained the following provisions:

"The above company, through their president, has received payment of $8,800 on this agreement. The balance due on this contract to be paid to the said company when this agreement is fulfilled and completed. The said oil and linters is to be delivered in Laredo, Tex., during the month of March, 1916, and as quickly as possible."

Plaintiff's allegations as to the damages sustained are as follows:

"That the said oil was so contracted to plaintiff as hereinbefore alleged at the rate of 58 cents per gallon, and the defendant obligated, bound, and promised to deliver the same for said 58 cents per gallon. That since the date upon which said oil was to be so delivered it has greatly enhanced in value, and the market price thereof is 70 cents per gallon, f. o. b. Laredo, Tex., and that by its failure and refusal to so deliver the said oil to this plaintiff, in accordance with said contract, the defendant has damaged this plaintiff in the sum of 12 cents per gallon, being the difference between the contract price and the present market price and value of said oil, amounting in the aggregate to $4,320, in which sum the said defendant is justly liable and owing this plaintiff, and for which he prays judgment.

"That by reason of the defendant's failure and refusal to deliver to this plaintiff the linters at 5 cents per pound the plaintiff has been further damaged in the difference between the said 5 cents per pound and its present market value, which this plaintiff alleged to be 7½ cents per pound, and that thereby and therein this plaintiff has been damaged in the sum of 2½ cents per pound, amounting in the aggregate to $312.50, in which sum the defendant is further justly due, owing, and liable to this plaintiff."

To this petition the defendant interposed a general demurrer, a general denial, and a special plea, to the effect that McAdams had agreed to pay to the Murray Company $8,800 as a part of the purchase money for the oil and linters in order to enable defendant to purchase certain machinery of the Murray Company; that an agent of the Murray Company and McAdams acted together in negotiating the trade, and there was a privity of interest between said company and McAdams, in that said company wanted to sell the machinery and McAdams wanted to buy the oil and linters; that McAdams failed and refused to pay the $8,800, and thereby breached the contract, and defendant was under no further obligation to deliver him the oil and linters.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

In reply to this plaintiff alleged that he was in no way interested in or connected with the Murray Company, and assumed no obligation to or in behalf of said company; that defendant knew the delivery of the oil and linters to plaintiff was a condition precedent to the payment by plaintiff of any sum whatsoever; and that it was agreed that, upon such delivery being made, plaintiff, as an act of accommodation to defendant and the Chavez Mill Company, would pay, out of the contract price to the Murray Company, the sum of $8,800.

Judgment was rendered in favor of plaintiff for $4,022.45.

[1, 2] By the first assignment it is contended that the court erred in rendering judgment, basing the damages on what the oil and linters sold for in April, 1916, when, if there was a breach of the contract, such breach occurred in March, 1916, and the measure of damages was the difference between the contract price and the market value in March, at which time the oil and linters were to be delivered. Of similar purport is the third assignment, in which it is contended that the court erred in rendering judgment for the plaintiff, as the pleadings asked for damages that could not be given under the law, and there were no pleadings alleging or calling for damages that could be given.

The contract provided that—

"The said oil and linters is to be delivered in Laredo, Tex., during the month of March, 1916, and as quickly as possible."

This means that the contract was to be fulfilled not later than during the month of March. The additional agreement to deliver as soon as possible may be discarded for all practical purposes. It is a promise by defendant to deliver as soon as possible, but is coupled with an agreement that delivery any time in March shall constitute a compliance with the contract. There is no allegation of any agreement to extend the time of delivery. It is alleged in the petition that the goods had greatly advanced in value, but it is not stated what it was worth at the time the contract was breached, but at the time the suit was filed, viz. April 17, 1916. The proof corresponded to the allegation. No facts are alleged which would justify measuring plaintiff's damages by any other than the general rule applicable to cases of breach of contract. That rule would entitle plaintiff to recover such amount as he lost by reason of the market value of the goods being greater, on the last day allowed for delivery, viz. March 31, 1916, than the price he contracted to pay. Sedgwick on Damages (9th Ed.) § 737; Cotton Seed Co. v. Cotton Oil Co., 25 Tex. Civ. App. 614, 61 S. W. 433; Stahr v. Hickman Grain Co., 132 Ky. 496, 116 S. W. 785. As the petition fails to show what the oil and linters were worth on March 31, 1916, it fails to show that plaintiff suffered any damages recoverable under the law. Linnartz v. Lawrie, 192 S. W. 789; Montgomery v. McCaskill, 189 S. W. 797. Plaintiff's pleadings and evidence were both insufficient to support the judgment rendered in this cause. The first and third assignments are sustained.

It is contended in the second assignment that the evidence showed that plaintiff had agreed to pay $8,800 to the Murray Company for defendant as part payment for the oil and linters, and that he failed to do so, and thereby breached the contract sued on by him.

The contract recites that $8,800 had been received by defendant, through its president, on the contract. As a matter of fact no money had been received by defendant, and it had been agreed that $8,800 was to be paid by plaintiff to the Murray Company, and credited by said company on a purchase by the Chavez Mill Company of certain machinery from the Murray Company, and the Chavez Mill Company in turn was to credit defendant with said amount on a purchase of stock. The contract sued upon was witnessed by Duncan, an agent of the Murray Company, who, after the contract was signed, wrote the Chavez Mill Company that he had received from defendant $8,800, with instructions that such amount was to be applied as part payment on the contemplated contract between his company and the Chavez Mill Company, and to be credited when said contract is approved. It appears from the testimony of Fuentes, the president of defendant company, that said company had subscribed for certain stock in the Chavez Mill Company, and its officers wanted this $8,800 to apply on such subscription, in order to get at once a controlling vote of the board of directors of said Mill Company; that after the contract was signed the Murray Company informed them it would not ship the machinery until the money was paid; and that then he (Fuentes) first learned that McAdams had not paid the $8,800. He testified that McAdams had agreed to pay the money at once. This was flatly contradicted by McAdams and Duncan, who testified that all parties knew the $8,800 was not to be paid until the oil was delivered to McAdams at Laredo; that defendant's officers wanted to make a showing that they had $8,800, so they could procure the controlling interest in the Chavez Mill Company; and that was why the $8,800 was described in the contract as cash, and why Duncan gave a receipt showing the Murray Company had been paid $8,800 by defendant company. The parties agreed that the contract did not recite the real agreement, in so far as it stated that the $8,800 had been paid to the president of defendant company. They also agreed that it was to be paid to the Murray Company, but disagreed as to the time when it was to be paid. The evidence sustains the finding of the court that the agreement was to the effect that the money was to be paid by plaintiff to the Mur-

ray Company upon delivery of the oil and linters to him, and that plaintiff was not a party to such arrangements as were made between Duncan and the officers of defendant company to enable the defendant company to receive immediate credit from the Chavez Mill Company for $8,800. The second assignment is overruled.

By cross-assignment it is contended that the court erred in failing to render judgment for the full amount sued for by plaintiff, with interest. This cross-assignment must, of course, be overruled, in view of our holding that plaintiff failed to allege and prove any damages recoverable under the law. Had it been proper to take the value of the goods at the time the suit was filed as a basis for measuring the damages, the court would have been justified in disregarding the testimony of the plaintiff, as to value, and accepting that of Johnson.

The judgment is reversed, and the cause remanded.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes